**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JAMIE A. MILLER,          )

                            )

         Plaintiff,      )

                            )

         v.             )        Civil Action No. 10-1130

                            )

LAUREL HIGHLANDS SCHOOL   )        Magistrate Judge Cathy Bissoon[1]
DISTRICT,               )

                            )

         Defendant.     )

## MEMORANDUM AND ORDER

### I.  MEMORANDUM

Pending before the Court is Defendant Laurel Highlands School District's Motion for Summary Judgment (Doc. 24).  For the reasons stated herein, the Court will deny Defendant's motion.

## BACKGROUND

Plaintiff Jamie Miller brought this action under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"), alleging that Defendant Laurel Highlands School District discriminated against her on the basis of age by failing to hire her.

On July 8, 2008, Defendant advertised a job opening for a Federal Programs Coordinator/Data Analyst.  See Federal Programs Coordinator/Data Analyst Posting of Professional Position (A.246) (Doc. 27-4 at 18).  The position was advertised only to Defendant's employees.  Brain Dep. at 91:8-92:14 (A.70) (Doc. 27-1 at 31).  Nonetheless, Plaintiff, who was not an employee of Defendant, was invited to interview for the position on July 16, 2008.  Id. at 96:5-97:4 (A.71) (Doc. 27-1 at 32); Administrative Interview Schedule

---

[1]    By consent of the parties, the undersigned sits as the District Judge in this case.  See Consent forms (Docs. 15, 16).

(A.264) (Doc. 27-4 at 36).  Jessica Scott, who was an employee of Defendant, also interviewed

for the position.  Administrative Interview Schedule (A.264) (Doc. 27-4 at 36).

On July 17, 2008, the school board voted 7-1-1 to hire Scott as the Federal Programs

Coordinator/Data Analyst.  School Board Meeting Minutes at 6 (A.375) (Doc. 27-6 at 24).

Director Beal voted "no" and Director Vernon abstained because Scott is his daughter.  See id.

Following the vote to hire Scott, Superintendent Gary Brain commented:

> We make a conscious effort to work with our staff.  If we don't
> have people within the District, we look outside.  When we have
> people within the District why look elsewhere?  We work to give
> young administrators and teachers opportunities to improve
> themselves.

Angie Oravec, LH School Board President, Superintendent Deny Nepotism Accusations, Herald-

Standard, July 18, 2008 (A.1) (Doc. 27 at 8).

When the school board voted to hire Scott, Plaintiff was forty-one years old and Scott

was twenty-eight years old.  Miller Dep. at 7:8-10 (A.36) (Doc. 27 at 43); Scott Dep. at 6:10-14

(A.201) (Doc. 27-3 at 40).  Defendant concedes that Plaintiff was qualified for the position.

Def.'s Br. at 9 (Doc. 25).

Defendant filed a motion for summary judgment (Doc. 24), asserting that Plaintiff has not

produced any direct evidence of age discrimination, that Plaintiff has failed to demonstrate a

prima facie case of age discrimination, and that Plaintiff has not shown that Defendant's

legitimate, non-discriminatory reasons for not hiring Plaintiff were a pretext for age

discrimination.

## ANALYSIS

### A. ADEA

Under the ADEA, an employer may not fail or refuse to hire any individual over forty

years of age because of the individual's age.  29 U.S.C. §§ 623(a), 631(a).  An ADEA plaintiff

may prove his/her case by presenting "direct evidence" of discrimination.  Fakete v. Aetna, Inc., 308 F.3d 335, 337 (3d Cir. 2002).[2]  Absent direct evidence, a plaintiff may nonetheless prevail by presenting "indirect evidence" of discrimination under the three-step burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Fakete, 308 F.3d at 337-38; Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009).

### B.  Direct Evidence of Discrimination

"Direct evidence" is evidence sufficient to allow the jury to find that the decision makers placed substantial negative reliance on the plaintiff's age in reaching their decision.[3]  Fakete, 308 F.3d at 338.  Plaintiff asserts that Superintendent Brain's comment that "[w]e work to give young administrators and teachers opportunities to improve themselves" is direct evidence of age discrimination.  While this comment may constitute circumstantial evidence of some general age bias, the comment is insufficient to allow a jury to find that Defendant placed "substantial

---

[2]  In Fakete, the Third Circuit addressed "direct evidence" in the context of the burden-shifting framework from Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).  See Fakete, 308 F.3d at 337-39.  The Supreme Court has since held that the burden-shifting framework of Price Waterhouse does not apply to ADEA claims.  Gross v. FBL Financial Servs., Inc., __ U.S. __, 129 S.Ct. 2343 (2009).

[3]  The Third Circuit applied this definition of "direct evidence" in the context of determining the type of evidence sufficient to shift the burden of persuasion under Price Waterhouse.  Since Gross, the Third Circuit has not addressed whether this definition continues to apply in the context of determining whether an ADEA plaintiff has presented sufficient evidence to survive summary judgment.  Gross held that the plaintiff always bears the burden of persuasion to prove that age was a "but for" cause of the adverse employment action.  Under that standard, direct evidence that shows that a defendant placed merely "substantial negative reliance" on age may also be insufficient to survive summary judgment.  Because Plaintiff's evidence does not even satisfy the definition of "direct evidence" under the "substantial negative reliance" standard, this Court need not determine if the heightened standard set forth in Gross applies at the summary judgment stage.

negative reliance" on Plaintiff's age in deciding to hire Scott instead of Plaintiff.  Brain's

comment, thus, is not "direct evidence" of age discrimination.[4]

### C.  **Indirect Evidence of Discrimination**

Because Plaintiff has not presented any direct evidence of discrimination, Plaintiff must

rely on the familiar burden-shifting framework of McDonnell Douglas.  First, the plaintiff must

establish a prima facie case of discrimination.  Smith, 589 F.3d at 689.  Once the plaintiff

establishes a prima facie case, the burden of production shifts to the defendant to identify a

legitimate, non-discriminatory reason for the adverse employment action.  Id. at 690.  If the

defendant does so, the burden of production returns to the plaintiff to demonstrate that the

defendant's proffered rationale was a pretext for age discrimination.  Id.  At all times, the burden

of persuasion rests with the plaintiff.  Id.

1. Prima Facie Case of Discrimination

For Plaintiff to establish a prima facie case of discrimination, she must show that:  (1) she

was forty years of age or older; (2) she was qualified for the position; (3) Defendant failed to hire

her; and (4) Defendant filled the position with someone sufficiently younger to permit an

inference of age discrimination or continued to seek applicants from among those having

---

[4]   Plaintiff also points to comments made by school board members Thomas Vernon (Scott's father) and Angelo Giachetti.  In reference to Scott, Vernon commented:  "This young girl deserves a job."  Angie Oravec, LH School Board President, Superintendent Deny Nepotism Accusations, Herald-Standard, July 18, 2008 (A.1) (Doc. 27 at 8).  With respect to a later hire unrelated to the decision to hire Scott instead of Plaintiff, Giachetti stated:  "She was a first grade teacher at Clark Elementary.  She is young, ambitious and ready to roll."  Christine Haines, Laurel Board Names New Clark Elementary Principal, Herald-Standard, Aug. 26, 2010 (A.5) (Doc. 27 at 12).  Neither of these remarks constitute direct evidence of age discrimination.  Neither remark suggests substantial negative reliance on age, there is no evidence that Vernon participated in the decision to hire Scott, and Giachetti's comment is not even related to the decision to hire Scott.  See Fakete, 308 F.3d at 338 n.2 (noting that "statements by non-decisionmakers" and "statements by decisionmakers unrelated to the contested employment decision" are not "direct evidence").

Plaintiff's qualifications.  See id. at 689-90; Waris v. Heartland Home Healthcare Servs., Inc., 365 F. App'x 402, 404-05 (3d Cir. 2010); Barber v. CSX Distribution Servs., 68 F.3d 694, 698 (3d Cir. 1995).  "[T]he prima facie test remains flexible and must be tailored to fit the specific context in which it is applied."  Sarullo v. United States Postal Service, 352 F.3d 789, 797-98 (3d Cir. 2003) (citing Geraci v. Moody-Tottrup, Int'l, Inc., 82 F.3d 578, 581 (3d Cir. 1996)).  For purposes of summary judgment, Defendant concedes that Plaintiff satisfies the first three elements of a prima facie case of discrimination.  Def.'s Br. at 9 (Doc. 25).  Defendant contends that the circumstances of this case do not permit an inference of discriminatory action.  See id.

When Defendant hired Scott instead of hiring Plaintiff, Scott was twenty-eight years old and Plaintiff was forty-one years old.  Scott Dep. at 6:10-14 (A.201) (Doc. 27-3 at 40); Miller Dep. at 7:8-10 (A.36) (Doc. 27 at 43).  It is well established that a thirteen-year age difference is sufficient to permit an inference of age discrimination.  See Barber, 68 F.3d at 699 (finding in ADEA failure to promote case that eight-year age difference between plaintiff and successful candidate "could support a finding that [the successful candidate] was 'sufficiently younger' than [the plaintiff] to permit an inference of age discrimination"); Russell v. Mercer Cnty. Ass'n for the Retarded, Civ. A. No. 10-242, 2011 WL 3610082, at *2 (W.D. Pa. Aug. 15, 2011) (Ambrose, J.) (finding thirteen-year age difference sufficient to permit inference of age discrimination).

Relying on Sarullo, Defendant contends that the absence of evidence suggesting that school board members had knowledge of Plaintiff's age precludes an inference of discriminatory intent.  Def.'s Br. at 11 (Doc. 25).[5]  In Sarullo, the plaintiff was terminated after being arrested

---

[5]   Defendant asserts that board members "were unanimous in their lack of knowledge regarding Miller's age," and that "[s]everal Board Members testified they could not discern whether Scott or Miller was older."  Id.  Defendant does not provide any citations to the record to support the assertion that board members were "unanimous" in their lack of knowledge regarding Miller's age.  The record on summary judgment contains insufficient information

for possession and distribution of cocaine.  <u>Sarullo</u>, 352 F.3d at 793.  After an indictment against the plaintiff was dismissed, he requested reinstatement to his position.  <u>Id.</u>  The plaintiff's reinstatement request was denied pursuant to a policy prohibiting reinstatement of employees terminated for cause.  <u>Id.</u>  The only "evidence" of age discrimination was the plaintiff's claim that his employer hired nine younger employees since his termination.  <u>Id.</u> at 799.  The decision-maker who denied the plaintiff's reinstatement request did not know the plaintiff's age, and nothing in the record suggested that the plaintiff was over forty.  <u>Id.</u>  In this context, the court found that "[a]bsent knowledge of [the plaintiff's] age, [the decision-maker's] decision not to reinstate him does not raise an inference of age discrimination."  <u>Id.</u>

Unlike the plaintiff's general assertions in <u>Sarullo</u> that nine younger employees were hired after the plaintiff's termination, Plaintiff in this case has demonstrated that Defendant failed to hire Plaintiff and that the specific position for which Plaintiff applied was offered to someone thirteen years younger than Plaintiff.  Plaintiff also has submitted evidence suggesting that school board members would have known that Plaintiff was over forty and older than Scott.  Specifically, Brain and school board members who interviewed Plaintiff were provided with a copy of Plaintiff's resume.  Miller Aff. ¶ 4 (A.989) (Doc. 30 at 40).  Plaintiff's resume indicates that she earned a bachelor's degree in 1989.  Miller Resume (A.991-92) (Doc. 30 at 43-44).  Scott's resume indicates that Scott earned her bachelor's degree in 2002.  Scott Resume (A.910) (Doc. 27-15 at 31).  While the year that someone earns a bachelor's degree does not conclusively establish that person's age, the thirteen-year difference between Plaintiff's graduation year and Scott's graduation year suggests that Plaintiff is likely older than Scott.

---

to make this conclusion, because Defendant submitted deposition transcripts for only seven of the nine school board members.  <u>See</u> Def.'s Appx. Vols. II-IV (A.47-180) (Docs. 27-1, 27-2, 27-3).

The thirteen-year age difference between Plaintiff and Scott suffices to satisfy the relatively modest evidentiary burden to establish a prima facie case of age discrimination. Barber, 68 F.3d at 699 ("All that need be shown is that the beneficiary of the alleged discrimination is 'sufficiently younger' to permit an inference of age discrimination." (citing Maxfield v. Sinclair Int'l, 766 F.2d 788, 792 (3d Cir. 1985))).[6]

2.   Defendant's Non-Discriminatory Reasons for Not Hiring Plaintiff and Plaintiff's Evidence of Pretext

Because Plaintiff has established a prima facie case of discrimination, the burden of production shifts to Defendant to identify a legitimate, non-discriminatory reason for failing to hire Plaintiff. Smith, 589 F.3d at 689.  Defendant identifies five supposedly legitimate non-discriminatory reasons for hiring Scott instead of Plaintiff:  (1) Scott was an in-house candidate and was hired in accordance with Defendant's longstanding practice of favoring in-house candidates; (2) board members believed Scott to be better qualified for the position given her

---

[6]   Additionally, the remarks made by Brain, Vernon, and Giachetti, while not "direct evidence" of discrimination, may nonetheless be additional circumstantial evidence that supports an inference of age discrimination.  In particular, Brain's comment may be relevant.  Defendant discounts the relevance of Brain's comment, noting that only school board members vote on the hiring of administrative personnel.  According to Defendant, "[n]one of the Board Members could recall Superintendent Brain making a recommendation regarding the hiring of Scott . . . ."  Def.'s Br. at 6.  Contrary to Defendant's assertion, school board member Beverly Beal testified that Brain recommended Scott.  Beal Dep. at 9:8-20 (A.170) (Doc. 27-3 at 9).  Further, Defendant's written policy on employment of administrators states: "Approval shall normally be given to the candidates for employment recommended by the Superintendent."  Laurel Highlands Sch. Dist. Policy No. 303 at 1 (A.7) (Doc. 27 at 14).  Thus, Brain's comments may be relevant to determining whether the decision to hire Scott resulted from discriminatory motives.  See Abrams v. Lightolier Inc., 50 F.3d 1204, 1214 (3d Cir. 1995) (holding that where a jury could reasonably find that plaintiff's supervisor participated in decision to terminate him, even though president of company was final decision-maker, evidence of supervisor's age-related animus would be relevant in determining if termination resulted from discriminatory motive ); Abramson v. William Paterson Coll. of New Jersey, 260 F.3d 265, 268 (3d Cir. 2001) ("Under our case law, it is sufficient if those exhibiting discriminatory animus influenced or participated in the decision to terminate.").

experience with Title I programs; (3) Scott participated in an internship with Defendant's then

Title I Coordinator Carol Bubonovich; (4) Scott was familiar to members of the board via her

experience as one of Defendant's employees; and (5) pursuant to terms of the Collective

Bargaining Agreement, the costs for employing Plaintiff would have exceeded the costs for

employing Scott.  Def.'s Br. at 12-13 (Doc. 25).

If Defendant has produced evidence to support its proffered non-discriminatory reasons

for not hiring Plaintiff,  the burden of production returns to Plaintiff to demonstrate that

Defendant's proffered reasons are pretextual.[7]  Smith, 589 F.3d at 689.  "[P]roof of pretext does

not have to include evidence of discrimination, but rather '[i]n appropriate circumstances, the

trier of fact can reasonably infer from the falsity of the explanation that the employer is

dissembling to cover up a discriminatory purpose.'"  Kautz v. Met-Pro Corp., 412 F.3d 463, 467

(3d Cir. 2005) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000)).

"Proof that the defendant's explanation is unworthy of credence is simply one form of

circumstantial evidence that is probative of intentional discrimination, and it may be quite

persuasive."  Reeves, 530 U.S. at 147 (citing St. Mary's Honor Center v. Hicks, 509 U.S. 502,

517 (1993)).  To demonstrate pretext, a plaintiff must demonstrate "such weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered

legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy

of credence."  Kautz, 412 F.3d at 467 (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir.

1994)).  A plaintiff ordinarily needs to rebut each of the employer's proffered reasons to avoid

---

[7]     Plaintiff's legal arguments are not entirely clear, and Plaintiff does not appear to argue that
Defendant has failed to meet its burden of production to provide evidence of its proffered
non-discriminatory reasons for not hiring Plaintiff.  The Court, nonetheless, will consider
both whether Defendant has met its burden of production and Plaintiff's arguments that
Defendant's proffered reasons are a pretext for age discrimination.

summary judgment, but "in a case where a 'defendant proffers a bagful of legitimate reasons,' casting 'substantial doubt on a fair number of them . . . may impede the employer's credibility seriously enough so that a factfinder may rationally disbelieve the remaining proffered reasons.'" Id. (quoting Fuentes, 32 F.3d at 764 n.7).

> a.  *Alleged Longstanding Practice of Hiring Internal Candidates*

Defendant asserts that:

> LHSD attempts to hiring [sic] all administrators from its existing
> work staff or 'within' the District.  If there are no in-house
> candidates who are appropriately certified and/or deemed to be
> qualified for the position in question, then the District will
> advertise and interview candidates and, in some cases, hire
> candidates from outside the District.

Def.'s Br. at 18-19 (Doc. 25).  Defendant also describes this alleged longstanding practice as "attempting to hire from within unless there were no available individuals with the necessary certifications and/or desired qualifications."  Id. at 21.  Defendant asserts that Scott was hired pursuant to this longstanding practice.

Defendant concedes that there is no written policy giving preference to in-house candidates for administrative positions.  Id. at 18.  The only evidence of Defendant's alleged policy appears to be the deposition testimony of school board member James Tobal, who testified that Defendant has an unwritten policy of giving preference to internal candidates over external candidates.  See Tobal Dep. at 13:13-29 (A.160) (Doc. 27-2 at 58).[8]  Because Defendant

---

[8]  In Defendant's Statement of Facts, Defendant also cites the deposition testimony of school board member Lynette Andaloro.  Andaloro testified that "[w]e try to promote from within," but explained that she would not consider it a "policy" and that "I cannot answer for everyone, their mind-set."  Andaloro Dep. 56:4-16 (A.147) (Doc. 27-2 at 45).  Viewing Andaloro's testimony in the light most favorable to Plaintiff, Andaloro's testimony suggests that Defendant did not have an established practice of hiring from within.  School board members Curtis Jacobs and Beverly Beal also testified that Defendant did not have a policy of giving preference to internal candidates over external candidates.  Jacobs Dep. at 9:25-10:7 (A.103-02) (Doc. 27-1 at 64-65); Beal Dep. at 19:9-20:21 (A.173) (Doc. 27-3 at 12).  In

has produced evidence in support of its proffered reason for hiring Scott pursuant to a

longstanding practice of hiring from within, the burden of production shifts to Plaintiff to

produce evidence demonstrating pretext.

Plaintiff asserts that the history of Defendant's hiring of administrators is inconsistent

with Defendant's alleged longstanding practice.  Specifically, in the five years prior to Defendant

hiring Scott, Defendant filled seven administrative positions.  All seven positions were filled

with external candidates.  Defendant asserts that its hiring history is consistent with its alleged

unwritten practice of favoring in-house candidates because when those seven positions were

filled, "there were not candidates in-house who had the appropriate certification and/or were

deemed to be qualified for the position."  Def.'s Br. at 19 (Doc. 25).

Contrary to Defendant's assertions, at least three of these hires appear to have been

inconsistent with Defendant's alleged practice of only seeking external candidates when no

qualified internal candidates exist.   Two hires were made on August 6, 2003, for two positions

as assistant principal for the High School.  Janet Petlevich was an internal candidate who was

certified for those positions, was interviewed for the positions, but was not hired because she was

not considered the "most qualified" candidate.  See Def.'s Statement of Facts ¶ 24 (Doc. 26)[9];

Brain Aff. ¶ 12 (A.956-57) (Doc. 27-15 at 77-78).  Both positions were filled by external

candidates, Edward Zelich and Jessee Wallace.  See Employment Offer Letters (A.950-51) (Doc.

---

Defendant's Brief, Defendant cites the deposition testimony of two additional school board
members.  Def.'s Br. at 12 (Doc. 25).  But that testimony relates to those board member's
individual reasons for voting to hire Scott and do not support the assertion that Defendant
had a longstanding practice of favoring in-house candidates.  See Elias Dep. at 16:18-17:2
(A.114) (Doc. 27-2 at 12); Giachetti Dep. 8:16-9:5 (A.122) (Doc. 27-2 at 20).

[9]   Neither party cites any evidence supporting the assertion that Janet Petlevich was certified
for the position of assistant principal for the High School.  The evidence cited in Defendant's
Statement of Facts consists of professional certificates for various employees of Defendant,
but does not include a certificate for Petlevich.  Defendant nonetheless concedes that
Petlevich was certified for the positions.

27-15 at 71-72).   Under Defendant's alleged longstanding practice, Defendant only seeks external candidates when no qualified, internal candidates are available.   Def.'s Br. at 18-19 (Doc. 25).   If Defendant had followed this alleged practice, it would have hired Petlevich, a qualified, internal candidate.

Similarly, Defendant's explanation that Beth Hutson was hired as Director of Federal Programs/Assistant Director of Elementary Curriculum because she was the "most qualified" appears to be inconsistent with Defendant's alleged policy of hiring internal candidates.   Two internal candidates, Matthew Kalich and Jeanne Moore, were interviewed for this position. Sheba Dep. at 52:22-54:8 (A.194-95) (Doc. 27-3 at 33-34); Interview Schedule for June 21, 2007 (A.262) (Doc. 27-4 at 34).   Kalich and Moore apparently were interviewed for the position the same day that other, external applicants were interviewed.   See Interview Schedule for June 21, 2007 (A.262) (Doc. 27-4 at 34).   According to former Superintendent Sheba, Moore was not hired because she was interested in being in the position for only a short period of time, and Kalich was not hired because Hutson had better qualifications and work experience.   Sheba Dep. at 54:20-56:4 (A.195) (Doc. 27-3 at 34).   According to Defendant's alleged practice, Defendant does not advertise administrative openings outside the school district and does not interview external candidates unless there are no qualified internal candidates.   Thus, under Defendant's alleged longstanding practice of hiring from within, Kalich and Moore would not have been interviewed on the same day as Hutson.   Further, under Defendant's alleged practice, Defendant would have hired either Kalich or Moore, who were qualified, internal candidates.[10]

---

[10]   After Defendant interviewed Moore, Defendant arguably deemed Moore not qualified because of her expressed intention to stay in the position for only a short period of time. This, however, does not explain why she was interviewed on the same day as several external candidates if Defendant had a longstanding practice of only seeking external candidates if no internal candidates are available.   Further, even if Moore was not qualified, Defendant's

Whether or not Zelich, Wallace, and Hutson were the most qualified candidates for the positions for which Defendant hired them, a genuine issue of material fact exists as to whether Defendant hired them consistently with an alleged longstanding practice of hiring qualified, internal candidates before even looking for external candidates.  In light of the limited evidence that such a practice existed and the evidence that Defendant did not followed such a practice, Plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendant's proffered longstanding practice of hiring from within "that a reasonable factfinder *could* rationally find" Defendant's explanation "unworthy of credence."[11] Kautz, 412 F.3d at 467 (quoting Fuentes, 32 F.3d at 764).  Genuine issues of material fact exist as to whether Defendant had a longstanding practice of "attempting to hire from within unless there were no available individuals with the necessary certifications and/or desired qualifications."

### b.  Board Members' Belief that Scott Was More Qualified

Defendant asserts that it hired Scott instead of Plaintiff because Scott was more qualified due to her experience with Title I programs and her internship with Defendant's then Title I Coordinator, Carol Bubonovich.  In response, Plaintiff has produced evidence sufficient to raise a genuine issue of material fact as to whether Scott even met the minimal qualifications set forth in Defendant's written policy for hiring administrators.

---

hiring of Hutson instead of Kalich is inconsistent with Defendant's alleged longstanding practice.

[11]  Significantly, Defendant does not assert that school board members relied on Scott's "internal" status as merely one factor to favor Scott over Plaintiff.  Defendant instead asserts that Scott was hired pursuant to a longstanding practice of always hiring internal candidates when possible.  While there may be little, if any, reason to doubt that school board members legitimately considered Scott's "internal" status as a factor in voting to hire her, there is evidence in the record from which a reasonable factfinder could rationally find that Defendant's explanation of a longstanding practice is unworthy of credence.

Under Defendant's written policy for employment of administrators, one of the "Hiring Requirements" for administrators is "[a]t least five (5) years experience as a full-time teacher, counselor, home education visitor, or other professional certificated position."  Laurel Highlands Sch. Dist. Policy No. 303 at 2 (A.8) (Doc. 27 at 15).  When Defendant hired Scott, Scott had one year experience as a part-time math coach, and four years of full-time teaching experience. Plaintiff contends that Scott did not have the five years of experience required by Defendant's policy for employing administrators.

Defendant first argues that whether Scott met this requirement is irrelevant because even if Defendant miscalculated Scott's years of experience, it does not relate to the controlling issue of whether Plaintiff's age was the but for cause of Defendant not hiring Plaintiff.  Def.'s Br. at 16 (Doc. 25).  But "proof of pretext does not have to include evidence of discrimination," because "'[i]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.'"  Kautz, 412 F.3d at 467 (quoting Reeves, 530 U.S. at 147).  As a nondiscriminatory reason for not hiring Plaintiff, Defendant asserts that Scott was more qualified than Plaintiff.  If Scott did not even meet the minimum requirements set forth in Defendant's written policy, this would be inconsistent with Defendant's assertion that Scott was better qualified than Plaintiff for the position.  Thus, whether Scott met the minimum requirements is relevant to the controlling issue of whether Defendant's failure to hire Plaintiff resulted from age discrimination.

Defendant next argues that Scott met the requirement for five years of work experience because Scott's first year as a part-time math coach could be counted as one year under the policy.  Def.'s Br. at 17 (Doc. 25).  According to Brain, he interpreted the term "full-time" in the policy to apply only to "teacher."  Brain Dep. at 13:22-22:20 (A.50-53) (Doc. 27-1 at 11-14).

13

Under Brain's interpretation of the policy, Scott's position as a part-time math coach was an "other professional certificated position" not subject to the "full-time" limitation in the policy. According to Brain, Scott's year as a part-time math coach therefore counted as one year of work experience under the policy.  See id.

Common sense and the plain language of the policy undermine Brain's explanation that the term "full-time" applies only to "teacher."  While the term "full-time" could be read either as modifying only the word "teacher," or as modifying the entire phrase, "teacher, counselor, home education visitor, or other professional certificated position," common sense favors the latter interpretation.  Under Brain's interpretation of the policy, five years as a part-time math coach would qualify someone to be an administrator, but one year as a part-time teacher plus four years as a full-time teacher would not.  Defendant states that "[w]ith the exception of Miller's self-serving interpretation, nothing contradicts Superintendent Brain's plain language interpretation of this policy."[12]  Def.'s Br. at 17 (Doc. 25).  However, with the exception of Defendant's self-serving interpretation, nothing contradicts Plaintiff's plain language interpretation of the policy either.  A reasonable factfinder could determine that Brain's interpretation of the policy is implausible, and a genuine issue of material fact exists as to the meaning of the policy.

Defendant asserts that Brain's interpretation of the policy is further supported by the Pennsylvania Department of Education's ("PDE's") calculation of service time for Scott's administrative certificate.  Def.'s Br. at 17-18 (Doc. 25).  On February 19, 2008, Scott applied for a Principal's certification, which requires five years of teaching experience.  See Verification of Experience Form (A.15) (Doc. 27 at 22); Pl.'s Statement of Facts ¶ 81 (Doc. 29).  The PDE

---

[12]   Contrary to Defendant's assertion, school board member Beverly Beal testified that four years of full-time experience plus one year of part-time experience would not satisfy the five-year requirement of the policy.  Beal Dep. at 7:9-8:11 (A.170) (Doc. 27-3 at 9).

accepted Scott's application and issued her a Principal's certification.  See Pl.'s Statement of Facts ¶ 82 (Doc. 29).[13]

It is unclear how the PDE's acceptance of Scott's application for a Principal's certificate supports Brain's interpretation of Defendant's policy.  Defendant argues that "absent a specific definition of the necessary service contained in the District's policy manual, the definition applied by the PDE should suffice to determine eligibility."  Def.'s Br. at 18 (Doc. 25).  But there is no evidence in the record to suggest that the standard the PDE uses for issuing a Principal's certificate is the same standard set forth in Defendant's written policy for hiring administrators.  Without any evidence of what standard the PDE applied, the Court cannot assume that the PDE applied the same standard set forth in Defendant's policy.

Further, nothing in the record suggests that the PDE decided that a part-time position as a math coach is equivalent to a full-time teaching position.  Scott's Verification of Experience Form that Brain submitted to the PDE lists Scott's year as a math coach as a full-time position. See Verification of Experience Form (A.15) (Doc. 27 at 22).  The evidence therefore suggests that the PDE, based on a form submitted by Brain, assumed that Scott had five years of full-time experience.

Defendant also seems to suggest that Scott's one year as a math coach was in fact a full-time position, but this argument does not support Brain's interpretation of Defendant's policy. Further, there is conflicting evidence with respect to whether Scott worked twenty-four hours per week during her time as a math coach, as represented on the Verification of Experience Form. According to former Superintendent Sheba, Scott would have worked only approximately

---

[13]   Defendant did not cite any evidence establishing that a Principal's certification requires five years of teaching experience or that Scott received a Principal's certification, but Plaintiff does not dispute these facts.

eighteen hours per week in her math coach position. Sheba Dep. at 60:4-17 (A.196) (Doc. 27-3). To the extent Defendant is arguing that Scott worked full-time as a math coach, there is a genuine issue of material fact as to whether Scott worked a sufficient number of hours as a math coach to qualify as a "full-time" position.

In light of the weaknesses in Defendant's argument regarding Brain's interpretation of Defendant's policy, and the additional "inconsistencies" and "incoherencies" introduced by Defendant's argument regarding the calculation of service time for Scott's Principal's certificate, "a reasonable factfinder *could* rationally find" Defendant's explanations "unworthy of credence." Kautz, 412 F.3d at 467 (quoting Fuentes, 32 F.3d at 764). A genuine issue of material fact exists as to whether Defendant hired Scott because Defendant believed she was more qualified than Plaintiff, or if Defendant's reliance on Scott's qualifications is a pretext for age discrimination.

   c.   *School Board Members' Familiarity With Scott*

Defendant next asserts that it hired Scott instead of Plaintiff because "Scott was familiar to members of the Board via her experience as a LHSD employee." Def.'s Br. at 13 (Doc. 25). In support of this proffered non-discriminatory reason for hiring Scott instead of Plaintiff, Defendant cites the deposition testimony of three school board members. First, Curtis Jacobs explained that he believed Scott was more qualified than Plaintiff because of Scott's "qualifications, and she came from within the district. We knew her work ethic and everything, and that was my reasoning." Jacobs Dep. at 16:17-24 (A.105) (Doc. 27-1 at 66). Jacobs's statement that "[w]e knew her work ethic and everything" only vaguely suggests that he was familiar with Scott. Further, Jacobs did not testify that this was a reason he voted for Scott. Jacobs instead testified that he voted for Scott because he is "a big believer in hiring from within." Id. at 15:7-21 (A.105) (Doc. 27-1 at 66). Jacobs's testimony, therefore, does not

support Defendant's assertion that school board members' familiarity with Scott was a reason for hiring Scott instead of Plaintiff.

Second, Defendant cites the testimony of Lynette Andaloro. Andaloro's testimony, however, indicates that she was not familiar with Scott's work as an LHSD employee. Andaloro was concerned that Scott being considered for the position might be the result of nepotism. Andaloro Dep. at 29:5-30:14 (A.140-41) (Doc. 27-2 at 38-39). Andaloro wanted to assure herself that Scott was qualified for the position, so Andaloro spoke with Scott's superior and another teacher to investigate Scott's qualifications. See id. Andaloro, therefore, apparently was unfamiliar with Scott's work as an LHSD employee. Andaloro ultimately determined that both Scott and Plaintiff were qualified for the job, and decided to vote for Scott because Andaloro believed it would "be a cost savings to the district." Id. Andaloro's testimony, therefore, does not support Defendant's assertion that Scott was hired due to board members' familiarity with her.

Third, James Tobal testified that he believed Scott was better qualified than Plaintiff and that Scott would be a "better fit" for the position. Tobal Dep. at 17:6-9 (A.161) (Doc. 27-2 at 59). Regarding Scott being a "better fit," Tobal explained:

> You take into account when you're hiring somebody not only their qualifications but how they fit into the district: For instance, Mrs. Scott had done her internship under Carol Bubonovich, who was the federal funds coordinator at the time. I felt that was an asset. Mrs. Scott is also working on her doctor degree, which greatly impressed me. And I felt that from a financial viewpoint, the district would benefit by hiring Mrs. Scott.

Id. at 17:10-20 (A.161) (Doc. 27-2 at 59). Tobal's testimony does not indicate that he was familiar with Scott and, therefore, does not support Defendant's assertion that Scott was hired instead of Plaintiff due to board member's familiarity with Scott.

Because none of the testimony cited by Defendant indicates that Scott was hired due to school board members' familiarity with her, Defendant has not satisfied its burden of production to support this proffered non-discriminatory reason for not hiring Plaintiff.  Even if Defendant satisfied its burden of production regarding this proffered nondiscriminatory reason for hiring Scott instead of Plaintiff, Plaintiff has cast "substantial doubt on a fair number" of Defendant's proffered "bagful of legitimate reasons" to "impede the employer's credibility seriously enough so that a factfinder may rationally disbelieve the remaining proffered reasons." Kautz, 412 F.3d at 467 (quoting Fuentes, 32 F.3d at 764 n.7).

> d.   *Cost Savings By Employing Scott Instead of Plaintiff*

Defendant's final proffered non-discriminatory reason for hiring Scott instead of Plaintiff is that the costs for employing Plaintiff would have exceeded the costs for employing Scott. According to Brain, hiring Scott saved Defendant $24,000 per year because Scott's former position was filled with a first-year teacher whose salary was $24,000 less than Scott's salary at that position.  Brain Aff. ¶¶ 8, 11 (A.956-57) (Doc. 27-15 at 77-78).[14]  At least two school board members testified that at least one reason that they voted to hire Scott instead of Plaintiff was because it would save Defendant money.[15]  See Elias Dep. at 16:18-17:2 (A.114) (Doc. 27-2 at 12); Andaloro Dep. at 29:5-30:14 (A.140-41) (Doc. 27-2 at 38-39).

---

[14]   Brain also referred to other cost savings associated with a larger restructuring that took place at the same time Defendant promoted Scott to the Federal Program Coordinator/Data Analyst position.  See Brain Aff. (A.956-57) (Doc. 27-15 at 77-78).  As those additional savings would have been realized regardless of who filled the Federal Programs Coordinator/Data Analyst position, those savings do not appear to be relevant to Defendant's decision to hire Scott instead of Plaintiff.

[15]   Defendant did not cite this testimony in support of its assertion that it hired Scott for cost savings.  Defendant only cited the testimony and affidavit of Brain regarding the amount of cost savings allegedly realized by hiring Scott instead of Plaintiff.  See Def.'s Br. at 13 (Doc. 25).  This evidence does not relate to whether cost savings was a reason Defendant hired Scott.  Because the testimony of the school board members nonetheless provides some

As evidence of pretext, Plaintiff submits evidence that nobody from the School District ever asked Plaintiff her salary requirements or whether she required benefits.  Miller Aff. ¶ 2 (A.989-90) (Doc. 30 at 40-41).  If Defendant did not know Plaintiff's salary and benefits requirements, Defendant could not have known whether hiring Scott instead of Plaintiff would have resulted in a cost savings.  In light of Defendant's failure to inquire about Plaintiff's salary and benefits requirements, "a reasonable factfinder *could* rationally find" Defendant's explanation "unworthy of credence."  Kautz, 412 F.3d at 467 (quoting Fuentes, 32 F.3d at 764).

## CONCLUSION

Viewing the evidence in the light most favorable to Plaintiff, and viewing the record as a whole, genuine issues of material fact exist as to whether Defendant's proffered non-discriminatory reasons for hiring Scott instead of Plaintiff are pretext for age discrimination.  For all of the reasons stated above, Defendant Laurel Highlands School District's Motion for Summary Judgment (Doc. 24) is denied.

## II.   ORDER

For the reasons stated above, the Court hereby **ORDERS** that Defendant Laurel Highlands School District's Motion for Summary Judgment (Doc. 24) is **DENIED**.

**IT IS SO ORDERED**.

s/ Cathy Bissoon
Cathy Bissoon
U.S. Magistrate Judge

October 7, 2011

cc (via e-mail):  All counsel of record.

---

evidence that Defendant hired Scott to save money, and because Plaintiff does not contest Defendant's satisfaction of its burden of production, the Court will consider this evidence, notwithstanding the poor briefing, and proceed to analyze Plaintiff's argument regarding pretext.